UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

GUNPOWDER RIVERKEEPER,

        *Plaintiff*,

    v.

MICHAEL S. REGAN, Administrator of the
United States Environmental Protection
Agency, et al.,

        *Defendants*.

Civil Action No. 1:20-cv-02063-CJN

**MEMORANDUM OPINION**

Plaintiff Gunpowder Riverkeeper challenges the Environmental Protection Agency's approval of Maryland's proposed total maximum daily load of polychlorinated biphenyls for the Gunpowder and Bird Rivers. *See generally* Compl. In Count 1 of its Complaint, Riverkeeper alleges that the EPA failed to perform a nondiscretionary duty to disapprove Maryland's proposal, which Riverkeeper alleges failed to comply with the Clean Water Act. *Id.* ¶¶ 69–77. In Count 2, Riverkeeper alleges that the EPA's approval is arbitrary and capricious under the Administrative Procedure Act, 5 U.S.C. § 706(2). *Id.* ¶¶ 78–92. The EPA moves to dismiss Count 1 only, on the ground that the EPA does not have a nondiscretionary duty to reject Maryland's submission. *See generally* Defendant's Motion for Partial Dismissal ("Defs.' Mot."), ECF No. 7. The Court agrees and grants Defendants' Motion.

**I.      Background**

Enacted "to restore and maintain the chemical, physical, and biological integrity of the Nation's waters," the Clean Water Act establishes the basic structure for regulating the discharge of pollutants into the waters of the United States. 33 U.S.C. § 1251(a). Under the Act's

cooperative federalism scheme, states have primary responsibility for establishing water quality

standards, subject to EPA approval.  *See id.* § 1313(c).

Once a state's water quality standards are established, the state must identify the bodies

of water within its jurisdiction that fail to meet those standards and establish the total maximum

daily load of pollutants that can be introduced into each identified body of water.  *Id.* §

1313(d)(1)(A), (C).  States must then submit to the EPA a list (known as the 303(d) list) of those

bodies of water and a proposed total maximum daily load for each.  *Id.* § 1313(d)(2).  The EPA

then "either approve[s] or disapprove[s] such identification and load not later than thirty days

after the date of submission."  *Id.*

In 2006 and 2008, respectively, Maryland added the Gunpowder and Bird Rivers to the

state's Section 303(d) list.  In compliance with the Clean Water Act, the state developed a total

maximum daily load proposal for both rivers.  Compl. ¶ 42.  During the relevant public-

comment period, Riverkeeper objected to both proposals, arguing that Maryland did not include

all potential sources of polychlorinated biphenyls ("PCBs"), which are man-made organic

chemicals used in products and materials produced before 1979 that can cause a variety of

adverse health effects.  *Id.* ¶ 60.[1]  Specifically, Riverkeeper complained that the proposed loads

failed to account for PCB contamination found in the rivers' bottom sediment and failed to

consider earlier compliance with water quality standards.  *Id.*  Maryland ultimately submitted its

proposed total maximum daily loads without change to the EPA, which approved them without

addressing the concerns Riverkeeper raised.  *Id.* ¶ 60–63.

Riverkeeper filed this complaint challenging the EPA's approval of Maryland's proposed

loads on two grounds.  First, relying on the Clean Water Act's citizen-suit provision—which

---

[1] *See also* EPA, What are PCBs?, https://www.epa.gov/pcbs/learn-about-polychlorinated-biphenyls-pcbs#congeners.

allows private plaintiffs to bring claims stemming from the agency's failure to fulfill any

mandatory duty under the Act—Riverkeeper claims that the EPA failed to execute its

nondiscretionary duty to disapprove of a total maximum daily load that failed to meet the

requirements of the Act. *Id.* ¶ 70.  Second, Riverkeeper claims that the EPA's approval of

Maryland's proposals constitutes an agency action that is "arbitrary, capricious, an abuse of

discretion, or otherwise not in accordance with law" and is "in excess of statutory jurisdiction,

authority, or limitations, or short of statutory right" within the meaning of the APA. *Id.* ¶ 79.

The EPA moves to dismiss Count 1 only, arguing that the statute does not create a

nondiscretionary duty to disapprove a state's proposal and that a citizen-suit claim is an improper

vehicle to challenge the EPA's approval.  Defs.' Mot. at 1–3.

## II.    Legal Standard

Rule 12(b)(1) of the Federal Rules of Civil Procedure provides for dismissal of an action

for lack of subject-matter jurisdiction.  "Under Rule 12(b)(1), the plaintiff bears the burden of

establishing that the court has jurisdiction." *Sheppard v. United States*, 640 F. Supp. 2d 29, 33

(D.D.C. 2009).  Because sovereign immunity is jurisdictional in nature, "a claim barred by

sovereign immunity lacks subject matter jurisdiction and may be dismissed under a 12(b)(1)

motion." *Scruggs v. Bureau of Engraving & Printing*, 200 F. Supp. 3d 78, 82 (D.D.C. 2016)

(quoting *FDIC v. Meyer*, 510 U.S. 471, 475 (1994)).  "The plaintiff bears the burden of

establishing that sovereign immunity has been abrogated." *Id.*

Rule 12(b)(6), in turn, provides for dismissal of an action for failure to state a claim upon

which relief can be granted.  A motion under Rule 12(b)(6) "challenges the adequacy of a

complaint on its face, testing whether a plaintiff has properly stated a claim." *Davis v. Sarles*,

134 F. Supp. 3d 223, 226 (D.D.C. 2015).  Only allegations that are factual, and not mere legal

conclusions, are entitled to the assumption of truth. *Ashcroft v. Iqbal*, 556 U.S. 662, 679–80

(2009).  To survive a motion to dismiss under Rule 12(b)(6), a complaint's factual allegations,

accepted as true, must contain sufficient factual material to raise a plausible right to relief.  *Bell*

*Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

### III.    Analysis

The Clean Water Act authorizes citizen actions against the EPA Administrator for the

failure "to perform any act or duty under this chapter which is not discretionary with the

Administrator."  33 U.S.C. § 1365(a)(2).  This citizen-suit provision constitutes a waiver of

sovereign immunity, 33 U.S.C. § 1365(a)(2), but waivers of sovereign immunity, of course, must

be "unequivocal" and are therefore "construed strictly in favor of the sovereign."  *U.S. Dept. of*

*Energy v. Ohio*, 503 U.S. 607, 615 (1992).  "The sovereignty of the United States raises a

presumption against its suability, unless it is clearly shown; nor should a court enlarge its

liability to suit conferred beyond what the language requires."  *Eastern Transp. Co. v. United*

*States*, 272 U.S. 675, 686 (1927).  Thus, "[a] clearly mandated, nondiscretionary duty imposed

on the Administrator is a prerequisite for federal jurisdiction under the [Clean Water Act] citizen

suit provision."  *Miccosukee Tribe of Indians of Fla. v. EPA*, 105 F.3d 599, 602 (11th Cir. 1997).

The Court may not enlarge the scope of the nondiscretionary duty beyond the statutory text.  *U.S.*

*Dept. of Energy v. Ohio*, 503 U.S. 607, 615 (1992).

The language of the Act is clear.  As relevant here, it provides:  "Each State shall submit

to the Administrator . . . for his approval the waters identified and the loads established.  The

Administrator shall *either approve or disapprove* such identification and loads not later than

thirty days after the date of submission."  33 U.S.C. § 1313(d)(2) (emphasis added).[2]

---

[2] "If the Administrator approves" the state's submission, the state must incorporate the list of impaired bodies of water and TMDL into its plan under the Act.  33 U.S.C. § 1313(d)(2).  But "[i]f the Administrator disapproves" the state's submission, he must, within thirty days, identify the impaired bodies of water and establish their TMDL to be incorporated under the state's plan.  *Id.*

4

This provision follows a "familiar and entirely sensible structure" containing both discretionary and non-discretionary components.  *Sanitary Bd. of Charleston v. Wheeler*, 918 F.3d 324, 332 (4th Cir. 2019).  As for the latter, the statute imposes certain inflexible requirements on the Administrator.  She must, upon receipt of a state's proposal, decide whether to approve or disapprove that proposal.  She must also make that decision within a certain timeframe—thirty days of receiving the proposal.

The statute does not, however, dictate what the Administrator's decision must be. Instead, the decision itself—whether to approve *or* disapprove the submission—is left entirely to the Administrator's discretion.  The Act uses conditional language when outlining the decision before the Administrator and "provides no fixed criterion that clearly delineates when approval [or disapproval] is required."  *Sanitary Bd. of Charleston v. Wheeler*, 918 F.3d 324, 332 (4th Cir. 2019).  It leaves that decision to the scientific judgment of the agency.  And such a decision, in which an agency brings its own calculations and scientific expertise to bear, "is the 'hallmark' of agency discretion."  *Envtl. Def. Fund v. Thomas*, 870 F.2d 892, 900 (2d Cir. 1989) (quoting *Kennecott Copper Corp. v. Costle*, 572 F.2d 1349, 1354 (9th Cir. 1978)).  The Administrator does not, as Riverkeeper claims, have a "clearly mandated, nondiscretionary duty" to disapprove a state's proposal.  *See Miccosukee Tribe*, 105 F.3d at 602.[3]  Without such a nondiscretionary duty, this Court cannot exercise jurisdiction under the citizen suit provision.  *See id.*

Other courts have reached similar results in analogous contexts.  In *Askins v. Ohio Dept. of Agriculture*, 809 F.3d 868 (6th Cir. 2016), for example, Plaintiffs claimed that the EPA was required to "conduct a hearing whenever a State is not administering a program in accordance"

---

[3]The relevant regulation mirrors the statute's discretionary language concerning total maximum daily load approval and imposes only an obligation to take some action on state submissions.  *See* 40 C.F.R. § 130.7(d)(2).  The Court need not decide whether that regulation could itself provide the basis for a citizen suit because it does not create a nondiscretionary duty to approve or disapprove a state's submission.  *See* 40 C.F.R. § 130.7(d)(2).

with certain statutory requirements, because the Act required that "whenever [the EPA]

determines after public hearing that a State is not administering a . . . program approved . . . [the

EPA] shall withdraw approval of such program." *Id.* at 877.  The Sixth Circuit held that the Act

required the EPA only to withdraw approval of a non-complying state program after a hearing

but did not impose on the EPA a nondiscretionary duty to conduct a hearing.  *Id.*  The Court

therefore concluded that it lacked jurisdiction to hear Plaintiffs' citizen-suit claims.  *Id.*

Other courts have rejected claims that the EPA had a nondiscretionary duty to approve or

disapprove state submissions like the ones at issue here.  In *Sanitary Board of City of Charleston*

*v. Wheeler*, 918 F.3d 324 (4th Cir. 2019), for example, Plaintiff challenged the EPA's denial of

its proposed water quality standards under the citizen-suit provision and argued that "the EPA

had no discretion to disapprove [its proposed water quality] standard," which the EPA had

previously determined to be consistent with the statute.  *Id.* at 327, 329.  The Court held that the

EPA did not have a nondiscretionary duty to approve West Virginia's water quality standards,

noting that when reaching a conclusion on the state's proposed standards, "the substance of the

decision is left to the expertise of the agency and it can exercise its judgment as it sees fit, so

long as it does not refuse to exercise it altogether."  *Id.* at 331–33.  As the Court put it, the Clean

Water Act imposes on the EPA "strict requirements . . . related to the timing and notification

procedures of a denial decision," but the agency's judgment to approve or disapprove a proposal

is "discretionary [even when its] timing is not."  *Id.* at 331–32.

Similarly, in *Scott v. City of Hammond, Indiana*, 741 F.2d 992 (7th Cir. 1984), the

plaintiff alleged that the EPA had a nondiscretionary duty to disapprove water quality standards

that fail to protect public health.  *Id.* at 994.  The Court held that "the *content* of water quality

standards cannot be ordinarily challenged through a citizen's suit."  *Id.* at 995.  The EPA had a

nondiscretionary duty to take some action by a date certain, but it did not have a

nondiscretionary duty to disapprove a state's water quality standards that Plaintiff claimed to be

inadequate. *Id.* at 994–98.

A final note. Riverkeeper insists that Congress intended the Act's citizen-suit provision

to provide a backstop for invalid state proposals regarding total maximum daily loads. Pl.'s

Opposition to Defendant's Motion for Partial Dismissal ("Pl.'s Opp'n"), ECF No. 9, 5–6. That

intent, Riverkeeper argues, would be frustrated here if it were unable to challenge the adequacy

of Maryland's proposals under the citizen-suit provision. *Id.* This argument is unpersuasive. In

addition to asking the Court to engage in the difficult task of divining the intent of a

multimember body such as Congress from something other than statutory text, Riverkeeper

ignores the fact that there are other avenues to challenge the EPA's approval of state total

maximum daily loads—including the filing of an APA claim, which Riverkeeper itself asserts in

Count II of the Complaint. *See* Compl. ¶ 78–92. The APA provides an appropriate venue for

redress as it allows Riverkeeper to seek judicial review of whether the EPA permissibly

exercised its discretion in approving Maryland's submissions. *See Sierra Club v. Thomas*, 828

F.2d 783, 792 (D.C. Cir. 1987) (indicating that the Clean Water Act's citizen-suit provision is an

improper venue to challenge an EPA's alleged abuse of discretion and noting that "we long ago

rejected . . . the convoluted notion that EPA is under a nondiscretionary duty—for purposes of

[the Clean Air Act citizen-suit provision]—not to abuse its discretion.").[4]

---

[4] Riverkeeper also argues that the constructive submission doctrine demonstrates that the Court possesses the power
to review Maryland's allegedly noncompliant proposal. *See* Pl.'s Opp'n at 7. But that doctrine is inapplicable here,
as it "applies only where a state 'clearly and unambiguously' expresses a decision not to submit" total maximum
daily loads. *Ohio Valley Environmental Coalition, Inc. v. Pruitt*, 893 F.3d 225, 230 (2018) (quoting *S.F. Bay
Keeper v. Whitman*, 297 F.3d 877, 882 (2002)). Here, Maryland submitted its proposed loads and the EPA approved
them.

**IV.     Conclusion**

In sum, Riverkeeper has failed to show that the EPA had a clearly mandated, nondiscretionary duty to disapprove an allegedly invalid state total maximum daily load proposal—a necessary prerequisite to bringing a citizen-suit under the Clean Water Act.  The Court therefore grants Defendants' Motion for Partial Dismissal.  A separate order will follow.

DATE:  August 23, 2021

CARL J. NICHOLS
United States District Judge

8